UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

KIMBERLY J. WHEELER,

    Plaintiff,

    v.                            Case No. 2:16-cv-421-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

Plaintiff Kimberly J. Wheeler seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court remands the ALJ's decision.

**A.    Overview of the Case**

Plaintiff alleges that she became disabled on October 16, 2012. (R. at 181.) Plaintiff previously worked as a stocker at Wal-Mart and as a pre-school teacher, but has not worked since 2012. (R. at 35–37.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from multiple severe conditions. (R. at 15.) The ALJ, however, found that she could perform past relevant work as a pre-school teacher. (R. at 23.) The ALJ also concluded that she could perform light work with some limitations. (R. at 19.) Therefore, the ALJ denied her benefits. (R. at 25.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.) Plaintiff's date last insured is December 31, 2017. (R. at 15.)

B.   **Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

C.   **Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

D.   **Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, she argues that the ALJ improperly weighed multiple medical opinions and omitted several of Plaintiff's limitations from the Residual Functional Capacity ("RFC") analysis.

**(1)** *The ALJ Mishandled the Weighing of Multiple Opinions*

The ALJ examined multiple medical opinions and weighed them as he saw fit. Plaintiff disagreed with nearly every weight that the ALJ assigned.

An ALJ must "articulate . . . a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability." *Steadmon v. Colvin*, 2016 U.S. Dist. LEXIS 130272 at *4 (S.D. Ind. 2016). Here, the ALJ provided an illegitimate reason for disregarding Dr. Carter's findings, which affected the ALJ's weighing of Dr. McKenna's opinion. Additionally, the ALJ failed to articulate his reasons for how he weighed the opinions of Drs. Shipley and Nordstrom.

**(a)** *The ALJ Improperly Disregarded Dr. Carter's Opinion*

Dr. Carter was one of Plaintiff's treating physicians, but the ALJ did not give "any substantial" weight to Dr. Carter's opinions. (R. at 21.) His sole reason was that Dr. Carter mentioned to Plaintiff in 2013 that he believed Plaintiff was disabled because she struggled to perform her daily activities. *Id.* Granted, an ALJ need not accept a treating physician's finding that a plaintiff is disabled. 20 C.F.R. § 404.1527(d). This, however, only means that a doctor's disability finding must not be given "any special significance." *Id.* An ALJ cannot ignore the physician's disability finding, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), nor can he ignore the physician's findings entirely. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Plaintiff saw Dr. Carter several times over a two-plus-year period. During that time, Dr. Carter chronicled Plaintiff's many bouts with seizures and migraines, which were "near-daily" in 2012. (R. at 401.) At one point, Plaintiff's migraines "require[d] being in bed." (R. at 403.) Additionally, Dr. Carter found that Plaintiff's migraine problems were chronic. (R. at 398.) None

of this is mentioned in the ALJ's opinion. For example, when discussing Plaintiff's seizures, the ALJ noted that Plaintiff "last saw Dr. Silverman [the doctor who first diagnosed her seizures] in 2012 and now sees a physician from the North Shore Health Center." (R. at 20.) The ALJ fails to mention the two-year gap in between the two physicians, during which Dr. Carter treated her. In fact, outside of the one-paragraph explanation of how he weighed Dr. Carter's opinion, the ALJ never referenced any of Dr. Carter's findings.

While an ALJ can assign a treating physician's opinion less than controlling weight, he cannot erase that opinion from the record. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). The ALJ, on remand, must analyze Dr. Carter's opinion and incorporate any of Dr. Carter's findings that he cannot properly discredit.

(b)    *The ALJ Failed to Explain His Weighing of Multiple Opinions*

The ALJ assigned "great weight" to Dr. Shipley's opinion, which found that Plaintiff's mental impairment was not severe. (R. at 22.) An ALJ is free to assign great weight to an agency consultant, but must explain why he did so. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). Here, the ALJ merely repeated Dr. Shipley's conclusion: "The undersigned gave great weight to the opinion of . . . William A. Shipley, Ph.D, who concluded that the claimant's directions in the 'B' criteria were either mild or none." (R. at. 22.)

The ALJ apparently looked at Dr. Shipley's conclusion, saw that it was favorable to a finding of not disabled, and weighed it based only on that factor. The ALJ may have done the same thing with a third-party functional report that Plaintiff's mother completed: "This opinion was given some weight as the claimant's mother described the claimant is able to perform some activities independently." (R. at 22.) An ALJ cannot credit an opinion solely because it furthers

4

his quest to find a plaintiff not disabled. *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). If the ALJ has a legitimate reason for assigning Dr. Shipley's opinion great weight, then he must state it.

As for Dr. Nordstrom's opinion, the ALJ never assigned it a weight. The ALJ must have agreed with the opinion, since he imported its "Summary and Diagnostic Impressions" section into his findings. (R. at 16.) Yet, at no point did the ALJ mention how much weight he gave to the opinion. He must do so on remand.

(c)  *The ALJ Properly Weighed the Opinions of Dr. Gupta and the Agency Examiners*

The ALJ gave "some weight" to Dr. Gupta's opinion with respect to his findings on Plaintiff's seizures and arthralgia. (R. at 20.) Although the ALJ did not explicitly state why he did so, he alluded to his reasons. First, he praised Dr. McKenna for reviewing the entire record, implying that a one-time examiner who did not have the entire record would be entitled to less weight. (R. at 20.) Second, he noted that Dr. Gupta's seizure analysis consisted entirely of Plaintiff's subjective complaints. *Id.* An ALJ's opinion should be read as a whole. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Doing so reveals that the ALJ minimally articulated his reasons for giving Dr. Gupta's opinion only some weight.

In Plaintiff's Disability Determination reports, the state agency examiners limited Plaintiff to sedentary work. (R. at 70, 81.) The ALJ afforded these opinions only "some weight" because they predated over a year's worth of additional records. (R. at 22.) Ultimately, the ALJ found that the ALJ could perform modified light work. (R. at 19.) Plaintiff labels this finding "illogical and inconsistent." (Pl.'s Br. at 12.) But an ALJ need not completely accept an agency examiner's opinion if the record contains contradictory evidence. *Ribaudo v. Barnhart*, 458 F.3d

580, 583 (7th Cir. 2006). Here, Dr. McKenna contradicted the agency examiners by opining that Plaintiff could perform some light work. (R. at 22.) The ALJ thus did not need to blindly accept the agency examiners' conclusions.

(d)   *The ALJ Must Reweigh Dr. McKenna's Opinion*

Dr. McKenna did not examine Plaintiff. However, Dr. McKenna had access to the entire record, explained his opinion by referencing several exhibits, and was subject to cross examination. (R. at 22.) Additionally, the ALJ identified consistency with the record as a factor favoring Dr. McKenna's opinion. *Id.* For those reasons, the ALJ afforded his opinion "significant weight." *Id.* Plaintiff argues that the ALJ gave this opinion too much weight because it was inconsistent with the opinions of the agency examiners and Drs. Gupta and Carter. (Pl.'s Br. at 13.) The ALJ minimally articulated why Dr. McKenna's opinion deserved more weight than those of the agency examiners and Dr. Gupta. However, on remand, the ALJ must evaluate whether Dr. McKenna's opinion is still entitled to significant weight given its inconsistencies with Dr. Carter's opinion.

**(2)   *The ALJ Corrupted His RFC Analysis by Ignoring Dr. Carter's Findings***

Plaintiff complained of migraines, wrist weakness, a cognitive disorder, and seizures. Dr. Carter's findings touched upon all four of Plaintiff's issues. Yet, the ALJ neither discredited nor incorporated any of these findings. Dr. Carter's opinion does not overcome the substantial evidence the ALJ cited with respect to Plaintiff's seizures. With respect to the remaining issues, the ALJ cannot create an accurate and logical bridge without either discounting or considering Dr. Carter's relevant findings.

(a)  *The ALJ Improperly Dismissed Plaintiff's Migraine Complaints*

The ALJ found Plaintiff's seizure disorder and migraine headaches to be severe impairments. (R. at 15.) Curiously, though, the ALJ appeared convinced that Plaintiff's migraines were a byproduct of her seizures, noting that Plaintiff's "seizures and headaches started at approximate[ly] the same time and that there was a correlation between a seizure and a headache." (R. at 21.) Outside of a step-three discussion, the ALJ hardly independently analyzed Plaintiff's migraines, evidently satisfied that once he discounted Plaintiff's claims of seizures, her alleged migraines would fall by the wayside.

The record, however, says otherwise. While discrediting Plaintiff's claims of frequent seizures, the ALJ stated that, at a September 2014 doctor's visit, Plaintiff "denied seizures [and] headaches." (R. at 20.) True, Plaintiff never tested positive for seizures after that point, according to the record. However, she returned to her physician a month later complaining of migraines that she claimed began two weeks prior. (R. at 590.) There, she tested positive for headaches. (R. at 593.) She returned for a follow-up two weeks later and again tested positive for headaches. (R. at 599.) Plaintiff thus continued having headaches even after controlling her seizures.

Plaintiff already lost one job due, in part, to her headaches. (R. at 36.) Dr. Carter's findings, if credited, show that history could repeat itself. (R. at 403.) Instead of properly discrediting these findings, the ALJ ignored them. No accurate and logical bridge could withstand such an omission.

(b)  *The ALJ Failed to Account for Dr. Carter's Findings*

7

Three doctors analyzed Plaintiff's alleged wrist weakness. Dr. Gupta imposed hand-use restrictions consistent with sedentary work. (R. at 548–50.) Dr. McKenna, whose restrictions the ALJ adopted, felt that Plaintiff could still perform modified light work even given her wrist problems. (R. at 54.) Dr. Carter found that Plaintiff had "severe muscle weakness" that was "permanent and progressive." (R. at 534.) Moreover, during Dr. Carter's examination, Plaintiff demonstrated weak grip and muscle strength in her upper extremities. (R. at 532.) The ALJ discussed none of these findings and thus ignored an entire line of contradictory evidence. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003).

Plaintiff also alleged a cognitive disorder that the ALJ found to be non-severe. (R. at 16.) The ALJ based this conclusion on Plaintiff's self-reports and on the opinions of Drs. Shipley and Nordstrom. *Id*. Again, however, the record contains findings from Dr. Carter that the ALJ ignored. This time, Dr. Carter found that Plaintiff had "poor concentration" and a "decreased ability to process." (R. at 534.) The ALJ neither discredited these findings nor considered them in his RFC analysis.

On remand, if the ALJ cannot properly discount Dr. Carter's relevant findings, then he must consider them when evaluating Plaintiff's wrist and cognitive issues.

(c)     *The ALJ Properly Discredited Plaintiff's Seizure Complaints*

Plaintiff suffered a seizure disorder that initially prevented her from driving. (R. at 403.) In September 2014, she told Dr. Gupta that she experienced three to four seizures a week. (R. at 543.) The ALJ, however, contrasted this with Plaintiff's records from North Short Health Center. (R. at 20.) These records show that, around the same time, Plaintiff tested negative for seizures. (R. at 586.) The records extended to November 2014, in which she again tested negative for

seizures. (R. at 599.) Moreover, the records list her seizure disorder as part of her past medical history, not as a present illness. (R. at 584.) True, Dr. Carter diagnosed Plaintiff with a seizure disorder that he felt as "permanent and progressive." (R. at 534.) But this does not disrupt the ALJ's conclusion that "with the use of medications, the seizures are controlled." (R. at 20.) Substantial evidence supports the ALJ's finding.

(d)  *The ALJ Properly Analyzed Dr. Gupta's Report*

Plaintiff accused the ALJ of cherry-picking portions of Dr. Gupta's report. (Pl.'s Br. at 15.) Specifically, Plaintiff claims that the ALJ ignored Dr. Gupta's dynamometer test, which found that her grip was weaker than that of a 10-year-old-girl. (Pl.'s Br. at 19.) However, the ALJ thoroughly discussed Dr. Gupta's positive and negative findings, including the dynamometer-test results. (R. at 18.) In the end, Dr. Gupta weighed his own findings and found that Plaintiff had "[n]ormal grip strength." (R. at 546.) The ALJ adequately considered Dr. Gupta's report as a whole.

**E.  Conclusion**

The ALJ improperly ignored Dr. Carter's opinion and, in doing so, produced an RFC analysis lacking an accurate and logical bridge. The ALJ also failed to explain his weighing of several opinions and failed to properly weigh Dr. McKenna's opinion. Accordingly, this Court remands the ALJ's decision.

SO ORDERED on July 3, 2018.

S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE